UNITED STATES, Appellee

v.

Harley T. LUSK, Staff Sergeant
U.S. Air Force, Appellant

No. 11-0166

Crim. App. No. S31624

United States Court of Appeals for the Armed Forces

Argued April 7, 2011

Decided August 24, 2011

PER CURIAM


Counsel


For Appellant:  Captain Phillip T. Korman (argued); Colonel Eric
N. Eklund and Lieutenant Colonel Gail E. Crawford (on brief);
Dwight Sullivan, Esq.

For Appellee:  Major Jamie L. Mendelson (argued); Colonel Don M.
Christensen and Gerald R. Bruce, Esq. (on brief).

Amicus Curiae for Appellant:  Greg Young (law student) (argued);
George Fisher (supervising attorney) (on brief) -- Stanford
University School of Law.



Military Judge:  David S. Castro



THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Lusk, No. 11-0166/AF

PER CURIAM:

Contrary to his pleas, a special court-martial composed of officer members convicted Appellant of one specification of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (2006).  The sentence adjudged by the court-martial and approved by the convening authority included a bad-conduct discharge and reduction to the lowest enlisted grade.  The United States Air Force Court of Criminal Appeals affirmed.  United States v. Lusk, No. ACM S31624, 2010 CCA LEXIS 367, 2010 WL 4068922 (A.F. Ct. Crim. App. Oct. 14, 2010)  We granted review to consider issues relating to the admissibility of information from a drug testing laboratory and related testimony of an expert witness.  United States v. Lusk, 69 M.J. 481-82 (C.A.A.F. 2011) (order); id. at 483 (order granting additional specified issue).[1]

I

Appellant, upon request, provided a urine sample during a unit inspection.  The Government subjected the sample to two different tests.  The first test, conducted by the Air Force Drug Testing Laboratory (AFDTL), yielded a positive result, as

_____

[1] We heard oral argument in this case at the Stanford University School of Law, Stanford, California, as part of the Court's "Project Outreach."  This practice was developed as a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

2

documented in a report issued by the laboratory. The second test, conducted by the Armed Force Institute of Pathology (AFIP) in response to a request by trial counsel for a retest by a different laboratory, also yielded a positive result. The report issued by the institute included variety of items, including a cover memorandum summarizing the positive test results. The cover memorandum bore the names of Barry Levine, the Director of the Forensic Toxicology Laboratory, and John F. Jemionek, Certifying Scientist. Neither Levine nor Jemionek testified at Appellant's trial.

The prosecution introduced into evidence the AFDTL report of the first test without objection by the defense. The defense moved to exclude the AFIP report of the second test prior to entering Appellant's plea.

The military judge granted the defense motion to exclude the AFIP report of the second test on the grounds that the second report contained testimonial hearsay. As such, the military judge concluded that introduction of the AFIP report of the second test, without testimony by the individual who prepared the report, would deny the defense the right of confrontation guaranteed by the Sixth Amendment, citing United States v. Harcrow, 66 M.J. 154 (C.A.A.F. 2008) (applying Crawford v. Washington, 541 U.S. 36 (2004), to the military justice system). The military judge reserved the question of

3

whether the prosecution could introduce the AFIP report of the second test into evidence later in the proceedings in the event that the defense opened the door to rebuttal.

In addition to the AFDTL report of the first test, the prosecution relied on the testimony of an expert in forensic toxicology, Dr. Smith, who testified as to the reliability of the AFDTL results. Citing the AFDTL report of the first test, Dr. Smith testified that the results of the first test showed that Appellant's urine specimen tested positive for the metabolite of cocaine.

The defense undertook an extensive cross-examination of Dr. Smith, challenging the validity of the first test by raising numerous questions about the reliability of testing by the AFDTL. At the prosecution's request, the military judge then considered whether the prosecution could rebut the defense attack on the reliability of the laboratory by asking Dr. Smith about the details the AFIP report of the second test as a basis for his expert testimony about the reliability of the first test. The defense objected on the grounds that to allow testimony based on the second test would allow the prosecution to rely improperly on inadmissible hearsay.

The military judge ruled that the prosecution could ask the expert witness about the basis of his expert testimony under M.R.E. 703 in light of the questions raised by the defense about

the reliability of the laboratory. The military judge then emphasized the limited scope of his ruling, noting that "I am still not going to allow the AFIP report [into evidence]." In that regard, he cited concerns about "testimonial hearsay" and reiterated that AFIP report of the second test "will not come in." He further noted that the expert's testimony about specific testing levels in the second test conducted by AFIP would not be more prejudicial than probative under M.R.E. 403 because such testimony would be consistent with the position of both parties. He reiterated that he would not allow the AFIP report of the second test into evidence, but would allow the expert "to testify in a limited fashion that [the AFIP report of the second test] is part of his reaching his conclusions about the reliability of the lab and the report that he did consider [included] a confirmatory test that was conducted by AFIP and that was part of the basis for his opinion." He added that testimony about the report of the second test conducted by AFIP "falls within [M.R.E.] 703, that is something that he clearly considered and that is what he testified to and that is what I'm going to allow."

At that point, the trial counsel asked the military judge whether the prosecution would be allowed to ask the expert witness on redirect examination about the specific numerical results in the AFIP report of the second test. The military

judge responded that he would allow the expert to testify that "he considered a second test, which was a confirmatory test conducted by AFIP." He added that he would then "need to craft an instruction that they [the panel members] are not to consider that for the truth of the matter asserted but rather for the manner in which the expert witness went about reaching his conclusion which he is allowed to do under [the] Military Rules [of] Evidence."

Trial counsel inquired into the consequences of questions about the numerical results, asking whether questions by the prosecution about the numerical results would open an opportunity for the defense to ask on cross-examination about the entire AFIP report of the second test. The military judge responded that if "the defense chooses to cross-examine in a limited fashion then that is what you are stuck with." He added that if "the defense chooses to conduct an extensive cross-examination then clearly that would open up more issues for you on redirect."

Defense counsel sought to clarify the relationship between the scope of cross-examination as to the basis for an expert's opinion and the scope of cross-examination that might result in introduction of substantive evidence on the merits. Defense counsel contended that the AFIP report on the second test contained testimonial hearsay, and that the breadth of his

cross-examination as to the AFIP report of the second test, in terms of the basis for the expert testimony, would waive "the requirement from the court that the government lay the proper foundation of Crawford to get the [report] submitted."

Trial counsel then agreed with the general principle that information relied upon by an expert as the basis for his opinion under M.R.E. 703 could include evidence that is otherwise inadmissible, adding that "the government would have no objection to [the defense] cross examining on the report without admitting it." The military judge added: "I do not think that that is going to trigger the admission of that document, [and] I will tell you that I am just inclined to continue to keep their report out." Trial counsel responded: "The government agrees, your Honor."

When the proceedings before the members resumed, the prosecution asked Dr. Smith for his opinion as to the reliability of the first test conducted by AFDTL. Dr. Smith responded: "Yes, that was a reliable result." The prosecution followed up by asking whether the first test conducted at the AFDTL provided "the only basis for your opinion that the drug test was reliable and that drug testing report?" Dr. Smith responded that he "had other information," noting that the "Armed Forces Institute of Pathology where I work also tested a

portion of that specimen." He added that "[i]t was a confirmation test, it was a GCMS test."

After establishing that the expert had relied on the second test, which had been conducted by AFIP, the prosecution asked the expert if he recalled the result of the second test. Dr. Smith responded: "Yes, it showed the presence of benzoylecgonine" -- the major metabolite of cocaine.

Defense counsel then conducted a detailed cross-examination of Dr. Smith, including examination into Dr. Smith's reliance on the AFIP report on the second test regarding the presence of benzoylecgonine. Without introducing the AFIP report into evidence, defense counsel cross-examined the expert about the basis for his reliance on the second test in view of the numerical results. In particular, defense counsel brought out that although the second test showed the presence of benzoylecgonine, the numerical value was below the cut-off level established by the Department of Defense to show the presence of cocaine. Dr. Smith responded: "Yes, but for a retest we don't have to be over the cut off. We just have to be able to detect and identify the compound." On redirect, the trial counsel asked the expert to explain the discrepancy between the numerical results of the first and second tests, and the expert noted both the possibility of deterioration over time and the fact that the

Department of Defense did not require a retest to meet the cut-off levels of an initial test.

After the parties concluded the presentation of evidence on the merits, the military judge discussed instructions with counsel. Although not requested to do so by either party, the military judge decided to not give a limiting instruction regarding the manner in which the members could consider the second test performed by AFIP. The military judge recalled that he had earlier said that he "was going to instruct them [the members] that they are basically [to] just consider that for the purposes of how he came to this conclusion and [the] basis for his opinion." He then said:

> After the extensive direct examination, cross examination and extensive questioning by the members I am inclined not to give that instruction because it is out there on the table for them now so, does that make sense?
>
> We have gone so far down the path . . . . At this point, we had relatively extensive direct examination and cross examination. I think the results from AFIP and their processes are pretty much before the court. I can't put the genie back in the bottle in light of counsel.

The trial counsel responded: "It's hard to put the toothpaste back in the tube . . . . The government has no issue with that."

Defense counsel responded by objecting that "it is still hearsay that you relied upon, it is testimonial hearsay and the

evidence was not introduced before the members."  The military judge responded that "the evidence is in front of the members through his additional testimony so, I will review it and I will consider it but I am likely just going to delete that from the instructions."  As a result, the military judge declined to give a limiting instruction regarding the AFIP report on the second test -- the report that had been relied upon the expert but which had not been introduced into evidence.

The prosecution's closing argument discussed the testimony of the expert witness, the details of the two test results, and the reliability of the test results.  The prosecution treated the reports of both tests as if the report of the second test had been introduced into evidence, arguing that "for you to believe that this test is not reliable and that it does not meet the beyond a reasonable doubt standard you would have to essentially expect that lightning struck twice for [Appellant]." The prosecution further stated that "you can rely on the result for several reasons: . . . number two, [the expert witness] also testified that he didn't just rely on the first drug test report; there was another test out there that confirmed it."

II

In United States v. Neeley, 25 M.J. 105, 107 (C.M.A. 1987), we observed that "the military judge should give a limiting

instruction concerning the appropriate use of [inadmissible evidence relied upon for the basis of the expert opinion]." See M.R.E. 105 ("When evidence which . . . is . . . not admissible . . . for another purpose is admitted, the military judge . . . shall restrict the evidence to its proper scope and instruct the members accordingly."); United States v. Affleck, 776 F.2d 1451 (10th Cir. 1985); United States v. Sims, 514 F.2d 147, 149–50 (9th Cir.), cert. denied, 423 U.S. 845 (1975) (when "such evidence" is admitted, it "becomes necessary for the court to" give a limiting instruction to the jury). Importantly, such instructions can ensure that the testimony is not transformed from evidence introduced for the limited purpose of showing what the expert witness relied upon into substantive evidence introduced for the purpose of establishing a truth of the matter, particularly in view of the potential that the latter case could raise constitutional issues under the Confrontation Clause of the Sixth Amendment. See United States v. Blazier, 69 M.J. 218, 224 (C.A.A.F. 2010). Limiting instructions are particularly important when evidence that is inadmissible, or admissible for only a limited purpose, involves a discrete fact or set of facts. See Adamson v. Cathel, 633 F.3d 248, 256 (3d Cir. 2011). Here, although the military judge initially recognized his obligation to provide such instructions, he ultimately declined to do so. His failure to do so was

11

compounded by trial counsel's reliance on testimony regarding the AFIP retest as substantive evidence during his closing arguments.

In Neeley, we held that the failure to give such an instruction sua sponte did not constitute plain error. In the present case defense counsel objected, and specifically noted that the report of the second test had not been introduced into evidence. The military judge declined to give the instruction, apparently because he believed that the instruction would have no impact on the members. We see no reason, however, to believe that members would be any less willing to consider an instruction on the limited nature of the testimony in this case than in any other case involving limited permissible use. See Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process."). Moreover, had the military judge made it clear that he would give the instruction, he would have provided a clear signal to the prosecution that it could not make affirmative use of information not introduced into evidence.

III

The Court of Criminal Appeals concluded that the military judge erred in failing to give the instruction, but concluded that the error was harmless.  The court, however, did not consider whether the failure to limit the use of the information from the AFIP report's cover memorandum, and reliance upon that evidence by the prosecution, resulted in a conviction based upon inadmissible testimonial hearsay in violation of the Confrontation Clause.  Given the fact-intensive nature of the interrelationship among the instructional matters, the Confrontation Clause aspects of the second test, and considerations of prejudice, this case warrants a new review by the Court of Criminal Appeals.  See Blazier, 69 M.J. at 227 (remanding in view of testimony by an expert witness who repeated the contents of an inadmissible cover memorandum).

The decision of the United States Air Force Court of Criminal Appeals is set aside.  The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for review consistent with this opinion.