# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40302**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Nikolas S. CASILLAS**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 December 2023

———————————

*Military Judge*: Colin P. Eichenberger.

*Sentence*: Sentence adjudged 18 March 2022 by GCM convened at Francis E. Warren Air Force Base, Wyoming. Sentence entered by military judge on 8 April 2022: Dishonorable discharge, confinement for 2 years, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Major Spencer R. Nelson, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RICHARDSON, and WARREN, *Appellate Military Judges*.

Senior Judge RICHARDSON delivered the opinion of the court, in which Chief Judge JOHNSON and Judge WARREN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

RICHARDSON, Senior Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of sexual assault in

violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920.[1,2] The military judge sentenced Appellant to a dishonorable discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority took no action on the findings or sentence.

Appellant raises six issues on appeal, asking whether: (1) Article 120(b)(2) and (g)(7), UCMJ, 10 U.S.C. § 920(b)(2), (g)(7), are unconstitutionally vague because they fail to put defendants on fair notice of the specific charge against them; (2) as applied, Article 120(b)(2) and (g)(7), UCMJ, did not give Appellant fair notice when the military judge denied trial defense counsel's request for a tailored jury instruction; (3) the military judge abused his discretion when (a) he ruled that the declarant-witness can state what the effect on the listener was, instead of the listener themselves, (b) the statement was character evidence that Appellant "wasn't a good person," and (c) he did not conduct a Mil. R. Evid. 403 balancing test; (4) the military judge abused his discretion when he denied Appellant's challenge for cause of a court member for actual and implied bias; (5) relief is required to correct the staff judge advocate's indorsement to the Statement of Trial Results that states a firearm prohibition was triggered;[3] and (6) whether Appellant's convictions are legally and factually insufficient.[4] We have carefully considered issues (1), (2), and (5) and find they do not require discussion or warrant relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)). We find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ, Military Rules of Evidence, and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was acquitted of a second specification of sexual assault.

[3] Appellant phrases this assignment of error as follows:

> The [G]overnment cannot prove 18 U.S.C. § 922 is constitutional by "demonstrating that it is consistent with the nation's historical tradition of firearm regulation" when [Appellant] was convicted of a nonviolent offense and this court can decide that question under *United States v. Lemire*, 82 M.J. 263 (C.A.A.F. 2022) [(mem.)] or *United States v. Lepore*, 81 M.J. 759 (A.F. Ct. Crim. App. 2021).

[4] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

The victim in this case, SF, hosted a birthday party at her off-base apartment for a fellow Airman.[5] Through a mutual friend, SF invited HC, who in turn invited Appellant. During the party, SF became intoxicated from alcohol. She also showed romantic interest in Appellant. After the party ended, Appellant, a civilian female MM, and SF stayed at SF's apartment to sleep. SF was feeling "super woozy," and "really tired." She changed into shorts and a t-shirt, and went to sleep on her bed, along with MM. SF testified that she awoke to Appellant penetrating her vulva with his penis. Appellant pulled up SF's shorts and walked to the bathroom. MM was asleep in another room, having moved at some point before the assault.

After HC left the party but before the sexual assault, she communicated with both SF and Appellant. HC went to SF's house because SF told her on the phone "she no longer wanted [Appellant] to stay at her house." After she arrived, HC asked SF "if she was okay with [Appellant] staying at her house." At first SF did not answer, then—with her eyes closed—she mumbled something to the effect that it was okay. Before she left, HC talked to Appellant, who assured her he would be leaving within 30 minutes.

After the sexual assault, SF texted her friend ES, and asked him to come over to get Appellant out of the house. SF and Appellant interacted until ES arrived, then Appellant left. SF "was shaking" and told ES she "didn't want to stay there anymore." SF woke MM, and they left with ES to go to his house. HC later joined them.

## II. DISCUSSION

### A. Challenge for Cause

Appellant asserts the military judge abused his discretion in this case when he denied Appellant's challenge for cause based on actual and implied bias for a member whose wife had been "raped." We find the military judge did not abuse his discretion.

### 1. Additional Background

In group voir dire, the military judge asked, "Has anyone, any member of your family, or anyone close to you personally ever been the victim of any offense similar to . . . the charged offense in this case?" Chief Master Sergeant (CMSgt) AG and eight other court members answered in the affirmative.

---

[5] The victim and, except where indicated, the witnesses were active-duty Airmen at the time of the offense.

In individual voir dire by the military judge, CMSgt AG elaborated. In 1992, his wife told him she was a rape victim. Since then, it came up in conversation no more than two or three times. When asked whether this affected him personally, he said, "I don't know that it necessarily affected me personally other than feeling bad for her and what she went through and trying to understand that." The military judge asked CMSgt AG several questions about what he thinks:

> Q. Do you *think* that knowledge of what your wife went through, your knowledge of that matter might impact your ability to be a fair and impartial panel member in a case that involves an allegation of sexual assault?"
>
> A. I *think* I can be impartial, Your Honor.
>
> . . . .
>
> Q. Why do you *think*, even though you're aware of what happened with your wife, you can kind of set that aside and you can be a fair and impartial panel member in this case?
>
> A. So, I *think* that any incident that is separate from another incident—you know, this we've lived with for a long time and I *think* we've processed it. And I just *think*—I *think* I can separate that incident from basically any other incident that I might hear of or try to assess, I guess, for lack of a better word.
>
> . . . .
>
> Q. If you remained as a panel member in this case, after the presentation of evidence, you know, you honestly kind of thought, you know, the [G]overnment hasn't really met their burden, "I think the right outcome here is a finding of not guilty." Do you *think* you'd have any difficulty disclosing that to your wife or letting her know that ultimately the decision reached was a not guilty verdict?
>
> A. I don't *think* I'd have a problem with that.
>
> . . . .
>
> Q. And, again, just similar, just kind of a broad, wide question. If you got to sentencing, why don't you *think* this wouldn't have any impact on your sentencing determinations?
>
> A. So, again, I just *think* that I can separate different cases—I shouldn't say that because it wasn't a case before, but different incidents. I don't think I have a much better answer than that.

4

(Emphasis added). CMSgt AG then affirmed he could separate his wife's incident from the incident alleged at trial, he could base his decisions on evidence and not personal experiences, he could follow the law, and he believed he could give Appellant a full, fair, and impartial hearing.

After the military judge concluded his questions for CMSgt AG, trial defense counsel questioned CMSgt AG:

> Q. A few follow-up questions for you. You mentioned that when asked if you thought this could impact—a finding of not guilty would impact your wife and your relationship in any way. You said, "I think it wouldn't impact." Why did you use "I think"?
>
> A. Well, yeah, I hate to assume anything, how she might feel, but—so, if I may, not to give too long of an answer, but she's a social worker; so I know she—she deals with these—you know, kind of sensitive issues, if you will. So, I just—I think our relationship, you know, that—that it just wouldn't—I know I said "I think." I didn't—I guess I didn't really focus on the word I was using. I know words mean things. So that's interesting that I said "I think." I just—You never know, right, when you're talking about [a] relationship with somebody else on what they might think, what they might—how they might act. I just don't want to assume that—that it won't affect her, that she won't have a different reaction than what I'm thinking.
>
> Q. And I just noticed a little bit of hesitation.
>
> A. Right.
>
> Q. Is that you thinking of an answer or is there an emotional response there?
>
> A. I think I'm thinking of the answer because that was an interesting point that you brought up. So I think I'm just thinking through the question and the answer, not necessarily emotional.

Trial defense counsel challenged CMSgt AG for actual and implied bias. Trial defense counsel argued that after CMSgt AG was asked whether "a finding of guilty [would] impact his relationship with his wife," he took "an extremely long pause to answer that question." Trial defense counsel disputed that CMSgt AG was "simply . . . thinking about the answer to the question, it genuinely seemed like a concerned hesitation." Trial defense counsel continued, CMSgt AG was "unable to answer for his wife, he didn't know how she was going to react if she found out about a finding of not guilty in this particular case."

The military judge considered the defense challenge for cause "based on [CMSgt AG's] wife having been a victim of sexual assault or rape under both the actual bias and implied bias standards," considered the liberal grant mandate, and denied the challenge. He did "not find this to be a particularly close call." He stated, *inter alia*:

> Though [CMSgt AG's] demeanor was characterized as drastically long pauses; and, potentially, at least in this Court's interpretation of counsel's argument an indication that he was somehow emotionally impacted or less than truthful in his responses. The Court did not get that impression from his responses. The pauses in his responses to questions to this Court, they were more clearly indicative of his thoughtfulness of the questions asked, his desire to answer them as candidly as possible. The Court found him and his body language and his demeanor and his responses to the questions posed to be candid and credible; and to have clearly articulated, he had no actual bias in this case.
>
> . . . .
>
> When asked about the way it impacted him personally, [CMSgt AG's] responses, what I'd imagine any of our responses would be, and that is that he had feelings for his wife and what she went through, but it didn't affect him personally, he just felt bad for her and trying to understand and be supportive for her. Not an unnatural human reaction and not one that would demonstrate a bias on the part of an individual such that their continued participation would cause damage to the perception of fairness in these proceedings.

CMSgt AG remained on the panel after the Rule for Courts-Martial (R.C.M.) 912(f)(5) random assignment. The Defense exercised its preemptory challenge on a court member whom it had not challenged for cause. CMSgt AG remained on the panel throughout Appellant's court-martial.[6]

**2. Law**

An accused has "the right to an impartial and unbiased panel." *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012) (citation omitted). A person

---

[6] Before cross-examination of SF, CMSgt AG informed the military judge he thought Appellant looked familiar. The military judge questioned CMSgt AG, who could not place how or when he might have interacted with Appellant. CMSgt AG had no negative memory of Appellant, and thought it was a positive experience. Thereafter, neither party desired to question or challenge CMSgt AG.

detailed to a court-martial shall be excused whenever it appears he or she "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N). "'Substantial doubt' exists where the presence of a member on the panel would cause the public to think 'that the accused received something less than a court of fair, impartial members,' injuring the public's perception of the fairness of the military justice system." *United States v. Commisso*, 76 M.J. 315, 323 (C.A.A.F. 2017) (citation omitted). "The burden of establishing that grounds for a challenge exist is upon the party making the challenge." R.C.M. 912(f)(3).

Potential court-martial members are subject to challenges for cause under actual bias and implied bias theories. *United States v. Hennis*, 79 M.J. 370, 384 (C.A.A.F. 2020). Under the former, the question is whether the member personally holds a bias "which will not yield to the military judge's instructions and the evidence presented at trial." *Nash*, 71 M.J. at 88 (citation omitted). Claims that a military judge erred with respect to challenges alleging actual bias are reviewed for an abuse of discretion. *Hennis*, 79 M.J. at 384.

Implied bias is measured by an objective standard. *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (citation omitted). "Implied bias exists when, 'regardless of an individual member's disclaimer of bias, most people in the same position would be prejudiced [that is, biased].'" *United States v. Briggs*, 64 M.J. 285, 286 (C.A.A.F. 2007) (alteration in original) (quoting *United States v. Napolitano*, 53 M.J. 162, 167 (C.A.A.F. 2000)). We assess implied bias based on the "totality of the factual circumstances," assuming the "hypothetical 'public'" is familiar with the military justice system. *Bagstad*, 68 M.J. at 462 (citations omitted).

We review the military judge's ruling on a claim of implied bias "pursuant to a standard that is 'less deferential than abuse of discretion, but more deferential than de novo review.'" *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017) (quoting *United States v. Peters*, 74 M.J. 31, 33 (C.A.A.F. 2015)). This standard is appropriate "in light of the fact that resolving claims of implied bias involves questions of fact and demeanor, not just law." *United States v. Woods*, 74 M.J. 238, 243 n.1 (C.A.A.F. 2015). Appellate courts afford greater deference to a military judge's ruling on a challenge for implied bias where the military judge puts his analysis on the record and provides a "clear signal" he applied the correct law. *United States v. Rogers*, 75 M.J. 270, 273 (C.A.A.F. 2016) (citations omitted). "In cases where less deference is accorded, the analysis logically moves more towards a de novo standard of review." *Id.*

"The military judge is [ ] mandated to err on the side of granting a challenge[; t]his is what is meant by the liberal grant mandate." *Peters*, 74 M.J. at 34 (citation omitted). That is, "if after weighing the arguments for the implied

bias challenge the military judge finds it a close question, the challenge should be granted." *Id*. Military judges who squarely address the liberal grant mandate on the record are given greater deference on appeal than those who do not. *United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007).

"[A] prior connection to a crime similar to the one being tried before the court-martial is not per se disqualifying to a member's service." *United States v. Terry*, 64 M.J. 295, 297 (C.A.A.F. 2007) (upholding military judge's determination of no actual or implied bias where court member's wife had been sexually abused before they met, and rarely discussed it).

### 3. Analysis

Appellant first faults the military judge by claiming "his *voir dire* was insufficient." He lists numerous questions that went unasked, the answer to which "would have provided valuable information for [d]efense [c]ounsel to make a challenge and for the [m]ilitary [j]udge to rule on the decision." Appellant concedes that the military judge "permitted counsel to ask additional questions when he was finished." We reject Appellant's claim of error. As this court has stated, "Appellant had the burden of establishing the basis for his challenge, not the military judge," and "it is up to the parties to obtain the information from the members to support their respective positions." *United States v. Covitz*, No. ACM 40193, 2022 CCA LEXIS 563, at *36 (A.F. Ct. Crim. App. 30 Sep. 2022) (unpub. op.) (first citing R.C.M. 912(f)(3); then citing *United States v. Wiesen*, 57 M.J. 48, 49 (C.A.A.F. 2002) (per curiam); and then citing *United States v. Mayo*, No. ARMY 20140901, 2017 CCA LEXIS 239, at *7–8 (A. Ct. Crim. App. 7 Apr. 2017) (mem.)).

Appellant asserts the "perhaps most glaring deficiency that the [m]ilitary [j]udge let stand" is CMSgt AG's pauses and answers caveated with the word "think." We give deference to the military judge's conclusions from CMSgt AG's demeanor, which he attributed to "thoughtfulness" and "his desire to answer [questions] as candidly as possible." We do not read CMSgt AG's answers—as Appellant implies—to signal that he would be influenced in his duty as a court member because his wife was a rape victim. Regarding word choice, it was the military judge who asked CMSgt AG multiple questions about what he "thinks;" CMSgt AG simply answered the questions asked. Later when confronted with his answers, CMSgt AG did not know why he used the word "think," probably because he did not remember that was how the questions were posed to him.

Regarding implied bias, Appellant asserts:

> Most members of the public in [CMSgt AG's] position would not want to go home to their rape-victim-wife and tell them, "we acquitted the accused for sexual assault charges today." While not

wanting to overgeneralize or stereotype, it is not difficult to im-
agine that most women who had been forcibly raped would not
appreciate hearing that from their husband.

We think it much more likely that a member of the public, including one who
had been forcibly raped, would want a court-martial to convict the guilty and
acquit the innocent, regardless of the crime alleged. We agree with the military
judge's conclusions that CMSgt AG's understanding and support for his wife
was "[n]ot an unnatural human reaction and not one that would demonstrate
a bias on the part of an individual such that their continued participation
would cause damage to the perception of fairness in these proceedings."

The military judge did not abuse his discretion in denying the challenge
for actual bias or implied bias. CMSgt AG's continued presence as a court
member would not have caused the public to perceive Appellant's panel as less
than fair and impartial.

**B. Objection to Witness Testimony**

**1. Additional Background**

After the sexual assault, SF texted HC, stating "Your friend is not a good
guy." HC saw the text later in the morning, and contacted SF. HC then met up
with SF and ES at the latter's house.

During its direct examination of SF, the Government tried to elicit from
her the substance of her text to HC. The Defense objected to it on hearsay
grounds. The military judge held a session outside the presence of the members
to consider the matter. The Government argued the text showed SF's state of
mind, or present-sense impression, or was an exited utterance, and thus was
an exception to the hearsay rule. The Defense stated it was just SF's opinion
of Appellant. The military judge sustained the Defense's hearsay objection.

The Government then asserted it wanted to elicit the statement as "effect
on the listener." The Government averred that it expected HC to testify that
this text "played into her" meeting with SF that morning. The Defense ob-
jected, asserting SF could not attest to the effect on the listener. The Govern-
ment questioned SF on this point:

> Q. [SF], did you receive a phone call from [HC] after that text
> message at some point that morning?
>
> A. Yes, sir.
>
> Q. And did that phone call—the substance of that phone call, the
> nature of that phone call relate to the message, as you under-
> stand, relate to the message you sent?
>
> A. Yes, sir.

As the military judge overruled Defense's objection to SF testifying about the text she sent HC, he informed the parties of the limiting instruction he planned to give the members about the substance of the text. Neither party objected.

SF continued her testimony before the members. She testified she communicated in the text message to HC, "That [Appellant] wasn't a good person." Immediately following, the military judge instructed the members substantially as he had told the parties, stating, "The statement the witness just testified to is being offered [ ] not for the truth of the matters contained in the prior statement. In other words, you can only consider it for its effect on any listener of that statement, not for the truth of the contents of the statement." Each member affirmed they understood the instruction.

HC testified that one message from SF "said that my friend was not a good guy." HC replied to this message about 10–15 minutes later, asking SF what happened. HC received another message from SF, and in response, went to ES's house, where SF had gone that morning.

**2. Law**

Appellate courts review "a military judge's decision to admit or exclude evidence for an abuse of discretion." *United States v. Clayton*, 67 M.J. 283, 286 (C.A.A.F. 2009) (citing *United States v. Datz*, 61 M.J. 37, 42 (C.A.A.F. 2005)). We will find an abuse of discretion when a military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Ayala*, 81 M.J. 25, 27–28 (C.A.A.F. 2021) (quoting *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019)).

"As a general rule, hearsay, defined as an out of court statement offered into evidence to prove the truth of the matter asserted, is not admissible in courts-martial." *Ayala*, 81 M.J. at 28 (first citing Mil. R. Evid. 801(c); and then citing Mil. R. Evid. 802). "[O]ut-of-court statements offered for other purposes, such as their effect on the listener to provide context, may be admitted as nonhearsay statements." *United States v. Leach*, No. ACM 39805 (f rev), 2022 CCA LEXIS 76, at *15–16 (A.F. Ct. Crim. App. 3 Feb. 2022) (unpub. op.) (citing *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (interpreting Fed. R. Evid. 801(c)(2), a provision identical to Mil. R. Evid. 801(c)(2)) (additional citation omitted), *rev. denied*, 82 M.J. 355 (C.A.A.F. 2022). After allowing an out-of-court statement offered for another purpose, the military judge should instruct the members accordingly so that the evidence "is not transformed from evidence introduced for the limited purpose . . . into substantive evidence introduced for the purpose of establishing a truth of the matter." *United States v. Lusk*, 70 M.J. 278, 281–82 (C.A.A.F. 2011) (citations omitted). Court

members are presumed to follow the limiting instructions of the military judge absent evidence to the contrary. *United States v. Taylor*, 53 M.J. 195, 198–200 (C.A.A.F. 2000) (citations omitted).

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable that it would be without the evidence; and (b) the fact is of consequence in determining the issue." Mil. R. Evid. 401. "The military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence." Mil. R. Evid. 403.

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Mil. R. Evid. 404(a)(1).

### 3. Analysis

Appellant asserts the military judge abused his discretion by allowing SF to repeat the words of a message she sent HC: "Your friend is not a good guy." In his assignment of error, Appellant claims the military judge abused his discretion when (a) "he ruled that the declarant-witness [SF] can state what the effect on the listener was, instead of the listener [HC] themselves;" (b) he allowed the statement which "was character evidence that [Appellant] 'wasn't a good person;'" and (c) he "did not conduct a Mil. R. Evid. 403 balancing test."

First, we cannot agree with Appellant's characterization of assertion (a). The military judge did not rule that SF could testify to the effect on the listener *instead* of HC. He allowed SF to testify that she sent those words about Appellant to HC, and to testify that HC contacted her afterwards regarding SF's interactions with Appellant. After an overruled defense objection on the grounds of "asked and answered," HC testified about the contents of this message. She also testified about her actions with respect to SF and Appellant that morning. We decline Appellant's suggestion to adopt a rule that someone other than the listener cannot provide relevant testimony about the effect the words had on the listener. *Cf. United States v. Roberson*, 65 M.J. 43, 46–47 (C.A.A.F. 2007) (finding an abuse of discretion where the military judge excluded a witness's opinion of the effect the witness's statement had upon the appellant).

Appellant makes a related claim: SF was speculating about the effect the statement had on HC. We find little support for this claim in the record. SF did not speculate that her message to HC that Appellant "was not a good guy" caused HC to act a certain way. SF testified she made this and other statements to HC about Appellant that morning. Her testimony, and the testimony of HC, showed that these discussions led to HC checking on SF's welfare and learning of her sexual assault allegation.

The Government did not offer the message as evidence of Appellant's character, the Defense did not object on those grounds, and the military judge did not allow it to be considered for that purpose. The military judge specifically limited its use "not for the truth of the matters contained in the prior statement" but "for its effect on any listener of that statement." The members each affirmed they could follow the military judge's instruction.

HC's interactions with SF before and after the offense, especially as they related to Appellant, were relevant to the charge of sexual assault; indeed, trial defense counsel did not object to the bulk of this testimony. While Appellant is correct that the military judge did not conduct a Mil. R. Evid. 403 balancing test on the record, we disagree with Appellant's implication that such an analysis was required on the record. Mil. R. Evid. 403 was not a basis for the Defense's objection to SF's testimony about this message. In conducting our own Mil. R. Evid. 403 balancing test, we see little danger in a witness who alleged sexual assault repeating a statement she made soon after the sexual assault that the assailant whom she barely knew was "not a good guy." We find the military judge did not abuse his discretion.

## C. Legal and Factual Sufficiency

### 1. Additional Background

While at ES's house, SF messaged Appellant, then talked to him on the phone. Appellant did not know their phone conversation was recorded, or that others were listening to the conversation. SF confronted Appellant with her memory that she woke up to his penis inside her; Appellant did not deny the act and told SF he ejaculated outside her. Appellant told SF, "[Y]ou were responsive for a little while. And after that you just weren't talking, weren't moving." Appellant told SF he felt "terrible" and was sorry. Appellant also said:

> I drank a lot and I started kissing you on the bed. You were kissing me back. And I just knew that I took it too far. You might have not been completely there, and I might not have been aware. . . . But I just knew—I don't think I—without making sure that you were fully there.

MM, the civilian female, recorded part of a conversation between Appellant and HC:

> [HC]: She was like just tired and you kept tickling her?
>
> [Appellant]: Yeah, she was out of it. I kept f[**]king with her, like I told you.
>
> [HC]: Yeah.

[Appellant]: I had to wake her a[**] up. But, yeah, she was completely out of it.

During a different recorded conversation, Appellant told HC he was not sure he penetrated SF with his penis.

SF testified that she did not consent to Appellant penetrating her vagina with his penis. MM opined SF was "very truthful." HC testified that SF's reputation in her unit is that she is untruthful.

**2. Law**

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted). In resolving questions of legal sufficiency, we are "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Bright*, 66 M.J. 359, 365 (C.A.A.F. 2008) (internal quotation marks and citation omitted). The evidence supporting a conviction can be direct or circumstantial. *See United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021) (citing R.C.M. 918(c)) (additional citation omitted). "[A] rational factfinder[ ] could use his 'experience with people and events in weighing the probabilities' to infer beyond a reasonable doubt" that an element was proven. *Id.* at 369 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). The "standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (internal quotation marks and citation omitted).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (second alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*,

76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

To convict Appellant of sexual assault, the Government was required to prove the following elements beyond a reasonable doubt that: (1) Appellant committed a sexual act upon SF, specifically by penetrating her vagina with his penis, and (2) Appellant did so without the consent of SF. *See* 10 U.S.C. § 920(b)(2); *Manual for Courts-Martial, United States* (2019 ed.), pt. IV, ¶ 60.b.(2)(d).

### 3. Analysis

Appellant personally asserts the findings of guilty to the charge and specification are legally insufficient because (1) SF was blacked out, and not passed out, and misinterpreted a consensual interaction as nonconsensual; (2) SF did not remember what happened or she was not testifying truthfully; (3) SF did not want to report the incident; (4) after the incident, SF allowed Appellant to rub her back, and SF did not leave the apartment or call the police; and (5) at least one witness testified that SF had a reputation for being untruthful. We are unpersuaded.

A rational finder of fact easily could have found the Government proved each element of each offense beyond a reasonable doubt. Importantly, corroboration of a witness's testimony is not required for legal sufficiency. *See United States v. Rodriguez-Rivera*, 63 M.J. 372, 383 (C.A.A.F. 2006) ("The testimony of only one witness may be enough . . . so long as the members find that the witness's testimony is relevant and is sufficiently credible." (Citations omitted)). SF credibly testified that she woke to Appellant's penis inside her vagina, and that she did not consent to that sexual act. Moreover, when SF confronted Appellant later that day, Appellant admitted to SF that the act occurred, and that at some point during the encounter she was no longer responsive. Appellant did not claim that he got SF's consent for the sexual act. *See United States v. McDonald*, 78 M.J. 376, 381 (C.A.A.F. 2019) ("The burden is on the actor to obtain consent, rather than the victim to manifest a lack of consent.").

We conclude that, viewing the evidence produced at trial in the light most favorable to the Prosecution, a rational trier of fact could have found the essential elements of the convicted offense beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297−98. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt beyond a reasonable doubt. *See Rodela*, 82 M.J. at 525.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court